The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for the additional Finding of Fact inserted as Number 12 which resulted in the renumbering of subsequent Findings, the additional phrase in Award Number 1 subjecting benefits to a credit for short term disability paid, the merging of Conclusions of Law Numbers 5 6, correction of 3 6/7 weeks instead of 7 1/7 in Award Number 2, and the correction of $412.00 instead of $362.26 in Conclusion of Law Number 6 and Award Number 2, and other minor corrections.
 *************
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant-employer is a qualified self-insured.
4. On 4 September 1996, plaintiff earned an average weekly wage of $768.00, an amount sufficient to yield the maximum compensation rate in 1996 of $492.00 per week.
5. The date of plaintiff's alleged specific traumatic incident was 4 September 1996.
6. Plaintiff was absent from work from 4 September 1996 through 25 March 1997. Plaintiff has since returned to work for another employer.
7. Plaintiff received $210.00 per week for twenty-six weeks of employer funded short term disability.
8. The following documents were stipulated into evidence:
a. Plaintiff's medical records in a bound and indexed volume.
 b. Plaintiff's responses to defendant-employer's First Set of Interrogatories and Requests for Production of Documents.
 *************
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, in 1996, was a twenty-five year old male employed by Employer-Defendant as a laborer/deck hand. His duties included maintaining machine operation of the No. 1 and No. 2 lathes in the Green End Department of Employer-Defendant's Dudley Plywood location. Employee-Plaintiff had been employed by Employer-Defendant since September, 1994.
2. On 4 September 1996, plaintiff arrived at work at 6:45 a.m. and reported to the deck to watch over one of the wood chipping machines. His duties included replacing the oil and knives in the wood chipping machine, standing by the machine to make sure the wood came out straight and watching for problems with the machine's operation.
3. Between 9:00 and 9:30 a.m., plaintiff noticed that there were nail blocks in the wood which was being fed into the wood chipping machine. Because of the nail blocks, the knives inside the machine became jagged. Plaintiff's job was to replace the jagged knives with a new set of knives. The procedure plaintiff had to follow to replace the knives was: shutting down the machine, opening the guards to the #1 lathe, taking the cradle filled with knives out of the lathe, breaking the jagged knives loose with a tool, taking the jagged knives out of the cradle, setting the clean knives inside the cradle, and finally placing the cradle of knives back into the machine. The knives were approximately 54 inches in length and weighed approximately 25 pounds. There are two knives per machine.
4. As plaintiff bent over to set the replacement knives into the machine cradle he experienced a sharp pain in his lower back, radiating into his left leg.
5. Plaintiff complained of pain radiating from his lower back into his buttocks and legs to the Green End Superintendent Mark Harris, Employee-Plaintiff's supervisor, Cecil Smith, and the plywood mill's Safety Director, Gary Kelly.
6. On 4 September 1996, plaintiff presented to the emergency department at Wayne Memorial Hospital complaining of low back strain with radiculopathy. Plaintiff reported that he had never suffered an injury to his back before. Plaintiff described his pain as originating from the incident of picking up knives. Plaintiff was referred to Dr. Robert Lacin, a neurosurgeon in Goldsboro, North Carolina.
7. Plaintiff presented to Dr. Lacin for examination. Plaintiff had a disc herniation at the L5-S1 level. He underwent a discectomy on 18 September 1996. Initially, plaintiff did well, but then had recurrent symptoms and underwent a subsequent discectomy, hemilaminotomy at L5 and a forminotomy on 9 October 1996.
8. After his second surgery, plaintiff continued to suffer pain in his back, and Dr. Lacin referred plaintiff to Dr. Charles Branch in Winston-Salem, North Carolina. Dr. Branch did not recommend surgery when he examined plaintiff on 15 January 1997. Dr. Branch advised plaintiff to continue conservative treatment.
9. Plaintiff returned to work with defendant-employer on 27 March 1997. Plaintiff had missed twenty-nine weeks of work. Dr. Lacin had prescribed work restrictions for plaintiff. However, defendant-employer required plaintiff to perform duties the same as when he had previously worked for defendant-employer prior to his back injury.
10. On 15 May 1997, plaintiff left work due to severe pain in his back. His trial return to work was unsuccessful.
11. No work within plaintiff's restrictions was subsequently provided plaintiff by the defendant-employer. Plaintiff never returned to work for defendant-employer.
12. Plaintiff received $210.00 per week for twenty-six weeks of employer-funded short term disability.
13. Plaintiff began training to be a truck driver for Calco, Inc., in Wisconsin on 3 July 1997. Plaintiff made training wages equal to $150.00 per week while training.
14. On 29 July 1997, plaintiff began making wages equal to or above his pre-injury wages.
15. Plaintiff has a 10% permanent partial disability rating to his back.
16. Although plaintiff's memory is hazy and he is not articulate, plaintiff's testimony is credible and consistent. The testimony of Cecil Smith and Gary Kelly, representatives of defendant-employer who contradict plaintiff's testimony in some aspects, is found by the undersigned to be less credible than that of plaintiff.
17. Plaintiff has proven by a preponderance of the competent, credible evidence of record that he sustained an injury on 4 September 1996, resulting from a specific traumatic incident of the work assigned.
 *************
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 4 September 1996, plaintiff sustained an injury as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff retained a 10% permanent partial disability of the back as a result of his injury. N.C. Gen. Stat. § 97-31.
3. Plaintiff's average weekly wage was $768.00, an amount sufficient to yield the maximum compensation rate of $492.00 per week. N.C. Gen. Stat. § 97-2(5).
4. As a result of plaintiff's work-related injury, he was totally disabled and incapable of earning wages of any kind from 4 September 1996 through 26 March 1997, a period of 29 1/7 weeks, and is therefore entitled to be recompensed for that period of time at a rate of $492.00 per week. Defendant-employer is entitled to a credit for payments of totally employer-funded short term disability paid plaintiff for twenty-six weeks at the rate of $210.00 per week.
5. Since plaintiff's trial return to work was unsuccessful, and he became totally disabled again, plaintiff is entitled to temporary total compensation for an additional 7 1/7 weeks for the period from 15 May 1997 until 3 July 1997 at a compensation rate of $492.00. He is also entitled to temporary partial compensation for a period of 3 6/7 weeks at the rate of $412.00 for the period from 3 July 1997 to 29 July 1997, when he worked as a truck driver for another employer earning training wages equal to $150.00 per week. On 29 July 1997, plaintiff began making wages equal to and above his pre-injury wages.
6. Plaintiff is entitled to be compensated for 30 weeks at a compensation rate of $492.00 based on the 10% permanent partial disability rating to his back as of 29 July 1997.
N.C. Gen. Stat. § 97-31.
 *************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-employer shall pay to plaintiff, on account of his two periods of temporary total disability, compensation at the rate of $492.00 per week for a total of 36 2/7 weeks. The compensation has accrued hereunder and shall be paid in a lump sum, subject to a reasonable attorney's fee hereafter approved and subject to credit for short term disability benefits paid.
2. Defendant shall pay plaintiff, on account of his temporary partial disability, compensation at a rate of $412.00 per week for a period of 3 6/7 weeks. The compensation has accrued and shall be paid in a lump sum, without commutation, subject to a reasonable attorney's fee hereafter approved.
3. Defendant-employer shall also pay to plaintiff 30 weeks of permanent partial compensation for his 10% permanent disability, at the rate of $492.00 per week, subject to a reasonable attorney's fee hereafter approved.
4. A reasonable attorney's fee in the amount of 25% of the accrued compensation benefits due under paragraphs one, two and three above, is hereby approved for plaintiff's counsel. The amount shall be deducted from the amounts due plaintiff and forwarded directly to plaintiff's counsel.
5. Defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
6. Defendants shall pay the costs.
This the ___ day of August 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER